IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:07-cr-248-WKW |
| | ) | |
| WILLIE GENE DAVIS | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On October 22, 2007, the Grand Jury for the Middle District of Alabama returned a one count indictment against defendant, Willie Gene Davis ("Davis"). The indictment alleges Davis is a felon who thereafter possessed an Iver Johnson revolver, in violation of 18 U.S.C. § 922(g)(1). Davis argues the discovery of the revolver violated his Fourth Amendment right to be free from unreasonable searches and seizures. *See* Doc. #42, *Motion to Suppress Evidence Found in Vehicle*. Davis acknowledges his arguments would not prevail under Eleventh Circuit precedent, but nonetheless seeks to preserve the issue for possible appellate review. For the reasons below the Magistrate Judge recommends that the District Court deny the motion to suppress.

## I. FACTUAL BACKGROUND

On April 27, 2007, Corporal (now Sergeant) Curtis Miller ("Miller") of the Greenville Police Department joined a traffic stop initiated by Officer Kenneth Hadley ("Hadley"). The uncontested grounds for the stop was violation of the city's noise ordinance. When Sergeant Miller arrived Officer Hadley was standing at the window of the driver, Stella Owens

("Owens"). Owens was about to take a field sobriety test when Miller went to the passenger door and started a conversation with the passenger. Miller asked the passenger for his name, and noted some hesitation and thought by the passenger who gave the name "Ernest Harris" Miller testified he could smell alcohol on the passenger's breath, noted slurred speech, and saw him "fidgeting" with his jacket pockets. The fidgeting consisted of "Harris" moving his hands in and out of pockets, and doing so after Miller told "Harris" to keep his hands out of his pockets.

Meanwhile, having failed the sobriety test, Owens was placed under arrest for driving under the influence, and taken to Hadley's car. Harris began to remove his jacket when Miller asked Harris to get out of the car. Miller told "Harris" to leave the jacket on. In response, "Harris" zippered shut a pocket of the jacket, removed the jacket, and left it in his seat. Miller conducted a safety pat-down search of "Harris." The traffic stop was in a residential area and a crowd of citizens were gathered nearby. The hesitation shown by "Harris" to provide a name prompted Miller to ask the group whether the passenger's name was in fact Ernest Harris. Miller was told by an onlooker the passenger is Willie Gene Davis ("Davis"). Davis was then arrested for giving false information to a law enforcement officer, handcuffed, and placed in Miller's vehicle.[1]

Miller testified any arrest of a driver results in the impoundment of the vehicle when

---

[1]Undisputed testimony during the suppression hearing showed Owens' vehicle was searched after Davis was arrested for providing false information to Miller. This is in contrast to the facts presented in Davis' motion and the United States' response, which recite that Miller searched the vehicle after Owens' arrest. *See* Doc. #42, at ¶ ¶ 3-4; Doc. # 46, at 1-2. Davis' motion mistakenly alleges Miller conducted the "search incident to [the] arrest" of Owens.

there is no family member or passenger to take possession of and operate the vehicle.  In preparation for impoundment of the car, Miller began an inventory search pursuant to standard operating procedure for Greenville police.  In the jacket Davis left in the front passenger seat, Miller found a revolver in the zippered pocket.  Miller testified that officer safety was always of paramount concern and the search of the vehicle was consistent with that goal.  Under cross examination, Miller acknowledged his incident report did not make explicit reference to an "inventory search."  He also acknowledged beginning the search with the jacket in the front passenger seat, as he had been curious about Davis' behavior concerning the garment.

## II. DISCUSSION

The Supreme Court has held that searches and seizures conducted without a search warrant violate the Fourth Amendment unless they fall within a limited set of well-defined exceptions.  *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).  Davis argues Miller's search of Owens' vehicle did not meet any such exception but was instead an invalid warrantless search for evidence of an unspecified and unrelated offense.  Consequently, Davis reasons the  illegality of the search provide grounds for the suppression of the revolver discovered in the jacket.  The United States defends the evidence as a lawful search incident to Owens' arrest. The facts and applicable law support the admission of the evidence.

Both parties cite *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) as the analytical starting point in this case.  In *Chimel*, the Court made clear that

> [W]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.

*Chimel*, 395 U.S. at 762-63, 89 S.Ct. at 2040. The operational issues which arose in searching vehicles incident to arrest led to new guidelines on constitutionally permissible searches for officer safety when automobile passengers were arrested. The Supreme Court expanded legitimate safety searches to passenger compartments of the recently occupied vehicle and any containers - open or closed - located therein. *New York v. Belton*, 453 U.S. 454, 460-61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The Eleventh Circuit has long repeated the rule from *Belton*, firmly establishing arresting officers' ability to conduct a contemporaneous warrantless search of a passenger compartment and containers. *United States v. Gonzalez*, 71 F.3d 819, 825 (11th Cir. 1996).

In this case, the search was conducted after the valid arrests of both occupants. The revolver was located in the passenger compartment, inside a zippered jacket removed by Davis in full view of Miller. The search of this compartment is valid under the *Chimel-Belton* rationales for officer safety, and was appropriately limited to the passenger compartment and containers located therein. *Belton,* 453 U.S. 454, 101 S.Ct. 2860; *Chimel*, 395 U.S. 752, 89 S.Ct. 2034. Both parties agree that current law squarely covers these facts and requires this Court to recommend denial of the pending motion to suppress. Davis submits the facts are more akin to those in *Arizona v. Gant*, 216 Ariz. 1, 162 P.3d 630 (2007), *cert. granted* — S.Ct. —, 2008 WL 482034 (Feb. 25, 2008) and seeks to preserve the issue

of the validity of the search should the Supreme Court's decision in that case affect the legality of the search in this case.[2]

Davis' motion to suppress is defective under another exception to the Fourth Amendment warrant requirement - the inventory search exception. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Inventory searches are appropriate where police have the authority to impound a vehicle and the search is consistent with established policy. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991). The former Fifth Circuit endorsed three separate justifications for the exception as follows: (1) protection of the owner's property, (2) protection of the police from false claims of lost possessions, and (3) protection of the police from potential danger. *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1981) (citing *Opperman,* 428 U.S. at 372, 96 S.Ct. at 3098).[3] Miller categorized his actions involving the vehicle as an inventory search conducted pursuant to the Greenville Police Department's Standard Operating Procedure. The search was undertaken in preparation to impound the car because Owens failed her sobriety test and her passenger, Davis, was also under arrest for giving a fake name to law enforcement. Even if Davis had not given a false name to Miller, the car would have been sent to impound.

---

[2]In *Gant*, the Supreme Court will review the need to conduct vehicle searches when "police had no reason to believe that anyone at the scene could have gained access to [the arrestee's] vehicle or that the officers' safety was at risk." *Gant* 216 Ariz. at 4, 162 P.3d at 643.

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding all decisions rendered by the former the Fifth Circuit prior to the close of business on September 30, 1981.

Miller testified that Davis was not sober enough to safely drive the car. Under either scenario, Miller's testimony about the arrest shows impoundment and inventory were appropriate under Greenville Police policy. Where a "vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992). The court finds an inventory search was appropriate due to the arrests of both passengers in the car and the need to impound the vehicle. The officers inevitably would have discovered the evidence in the routine inventory search they were required to perform. *See United States v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002). Under this analysis, the motion to suppress is due to be denied, and the revolver should be admissible against Davis at trial.

In conclusion, Miller's testimony that officer safety is always a consideration in traffic stops supported his search of Owens' car. Indeed, the rationale for searches incident to arrest and for inventory purposes both cite officer safety as grounds for their necessity. *See Chimel*, 395 U.S. 752, 89 S.Ct. 2034; *Staller,* 616 F.2d 1284. Here, the need to conduct a safety-related search of the car incident to the arrest of its recent occupants, and in preparation for impoundment were established by Miller's uncontroverted testimony.

### III. CONCLUSION

For the foregoing reasons, it is the **RECOMMENDATION** of the Magistrate Judge that the *Motion to Suppress Evidence Found In Vehicle* (Doc. #42) filed by the defendant be **DENIED**.

*It is further ORDERED that the parties shall file any objections to the said Recommendation by April 23, 2007.*   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 10th day of April, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE