IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No.: 2:07CR248-WKW |
| ) | |
| WILLIE GENE DAVIS ) | |

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**COMES NOW** the defendant, Willie Gene Davis, by and through undersigned counsel, Joseph P. Van Heest, and hereby objects to the April 10, 2008 Report and Recommendation of the Magistrate Judge which was issued following an April 8, 2008 suppression hearing.

Following an evidentiary hearing on Defendant's Motion to Suppress the evidence found during a search of the vehicle following the arrest of the driver, the Magistrate Judge issued a Report and Recommendation finding that the motion to suppress was due to be denied under two exceptions to the Fourth Amendment warrant requirement – search incident to arrest, and inventory search.[1]

**I.  The Search Incident to Arrest**

The Recommendation concluded that one of the bases for the search of the vehicle

---

[1] Mr. Davis filed the motion to preserve the issue of search incident to arrest due to *certiorari* being granted in *Arizona v. Gant*. The Government filed a response arguing that under the current search incident to arrest analysis in the Eleventh Circuit, the suppression motion is due to be denied. The government argued in the alternative that the police had a reasonable basis to search the jacket as a protective sweep pursuant to *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). The inventory search exception to the warrant requirement was first raised when Cpl. Miller testified at the evidentiary hearing.

was that it was being conducted as a search incident to arrest of both occupants. Pursuant to *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court recognizes that legitimate safety searches in automobile searches expanded beyond the wingspan reach enunciated in *Chimel v. California*, 395 U.S. 752 (1969), to cover passenger compartments of recently occupied vehicles and any open or closed containers located in the passenger compartment. *Id.*, at 460-61. The Eleventh Circuit has recognized and repeated the rule in *Belton*. *See United States v. Gonzales*, 71 F.3d 819, 825-26 (11th Cir. 1996); *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1222-23 (11th Cir. 1993).

However, in *Arizona v. Gant*, ___ S.Ct. ___, 2008 WL 480234 (U.S. Feb. 25, 2008), the Supreme Court recently elected to address the following issue, which could have a significant impact upon the analysis of searches incident to arrest with regard to automobiles: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?"

The Magistrate Judge's Report and Recommendation applied *Belton*, and *Gonzales*, and applied a bright-line test to conclude that Cpl. Miller was entitled to search the vehicle incident to the arrest of the driver and Mr. Davis, without regard to issues of officer safety or preservation of evidence. Specifically, the Recommendation states that:

> [T]he search was conducted after the valid arrests of both occupants. The revolver was located in the passenger compartment, insider a zippered jacket removed by Davis in full view of Miller. The search of this compartment is valid under the *Chimel/Belton* rationales for officer safety, and was appropriately limited to the passenger compartment and containers located therein.

2

Recommendation, at 4. The only articulation of officer safety being implicated was that "Miller testified that officer safety was always of paramount concern and the search of the vehicle was consistent with that goal." Recommendation, at 3. This general statement that "officer safety [is] always of paramount concern" is not the type of reasonable and articulable suspicion which would pass muster under *Terry v. Ohio*, *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (protective sweep by police officers permitted where police have reasonable belief based on "specific and articulable facts which, if taken together with the rational inferences from those facts, reasonably warrant" the officers in believeing that the suspect is dangerous and the suspect may gain immediate control of weapons.") and *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (authorizing a limited pat down search of a person where police possess an articulable suspicion that an individual is armed and dangerous.)

As to the search incident to arrest exception to the warrant requirement of the Fourth Amendment, Mr. Davis objects to perfect the issue for appeal. *See* Recommendation, at 7, (Failure to file written objections to the proposed findings and advisements ... shall bar the party from ... attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court....").

**II.   The Inventory Search**

*Law & Analysis*

Inventories of seized vehicles pursuant to standard police procedures were held to be reasonable under some circumstances in *South Dakota v. Opperman*, 428 U.S. 364, 376 (1977). However, the Eleventh Circuit has recognized that an inventory search is not

3

a surrogate for an investigation, and the scope of the inventory search may not exceed that necessary to accomplish the ends of the inventory. *United States v. Khoury*, 901 F.2d 948, 958-59 (11th Cir. 1990). In *Khoury*, the Court of Appeals stressed the importance that an inventory search may not be motivated by investigative concerns. Moreover, inventory searches must be limited to effectuation of the recognized purposes for which they are conducted and the may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible. *Id.*, at 959, citing *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979).[2] A law enforcement officer may impound a vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of "something other than suspicion of evidence." *Sammons v. Taylor*, 967 F.2d 1533 (11th Cir. 1992).

Once impounded, the vehicle's contents may be inventoried. Law enforcement officers may conduct an inventory search of closed containers which are found in an automobile, so long as the inventory is carried out pursuant to standard police procedures that require the opening of such containers, and is not conducted in a bad faith effort aimed solely at the investigation of criminal conduct. *Colorado v. Bertine*, 479 U.S. 367 (1987). Where there is no policy in the jurisdiction requiring closed containers be opened and searched during an inventory search, evidence obtained during the search must be suppressed. *Florida v. Wells*, 495 U.S. 1 (1990).

### *The Facts Relevant to the Claimed Inventory Search*

---

[2] In *Bonner v City of Prichard*, 661 F.2d 1209 (11th Cir. 1981) the *en banc* decision adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Cpl. Miller testified that the search was conducted as an inventory search based upon standard operating procedures of the Greenville Police Department. Transcript, at 13. He first testified that any arrest of a driver results in the impoundment of the vehicle, (Transcript, at 13), then qualified it by saying that any arrest of a driver results in the impoundment of a vehicle when there is no family member present. (Transcript, at 14). Then he further seemed to qualify his answer by explaining that Mr. Davis (not a family member of the driver Stella Owens), would not have been permitted to drive the vehicle away if he had not been arrested, *because he appeared to be under the influence of alcohol*. See Transcript, at 14.

Cpl. Miller testified that he and Officer Hadley went through and inventoried all the property that was in the vehicle, in the compartment. *See* Transcript, at 45-46. While Cpl. Miller testified that he began an inventory search pursuant to standard operating procedure for Greenville Police, his Incident and Offense Report failed to mention that an inventory search was conducted. (*See* Def. Exh. 1; Transcript, at 43.). Cpl. Miller could not remember if he had ever told ATF Special Agent Sybil Hall-McNeil about an inventory search. Transcript, at 53. Additionally, the Report of Investigation prepared by Special Agent Hall-McNeil following her interview with Cpl. Miller failed to mention that he had ever claimed the search of the vehicle was an inventory search. (*See* Def. Exh. 2) No specific evidence of the Greenville Police Department's Standard Operating Procedures with regard to impoundment and inventory searches of vehicles was provided other than Cpl. Miller's generalized testimony that he had followed Greenville Police Department's

Standard Operating Procedures. In addition, no manual was ever produced.[3]

Cpl. Miller did testify that a vehicle Impound Record was prepared. Transcript, at 46. Remarkably, while conceding that the purpose of the inventory was to safeguard the property of the vehicle owner and/or passenger, (*Id.*, at 46), Cpl. Miller testified that Greenville Police Department *never* provides a record of the inventory to the individual whose items have been confiscated and/or seized. See, Transcript, at 46. This was Cpl. Miller's testimony as to the "standard operating procedures" regarding "safeguard[ing] their ... items in the vehicle" despite the fact that the admitted purpose of preparing an inventory was to document the items found in the vehicle if there's ever a claim by an occupant of the vehicle of damage or theft. Transcript, at 46. He further stated that he could not remember what would have been on the inventory record, except that the pistol "should have been [listed on the inventory report]" Transcript, at 47, and the jacket alleged to have been worn and discarded by Mr. Davis, and found to contain a firearm, "would have been also." Transcript, at 47.

Special Agent McNeil testified that Cpl. Miller did tell her about an inventory search but that she had failed to note that on her Report of Investigation. Transcript, at 62. However, she testified that when she spoke with Cpl. Miller "he told me that Ms. Stella Owens was taken into custody and they did a search of the vehicle *incident to the arrest* of Ms. Owens and him also not – also not being arrested. He did tell me at that time that

---

[3] Written documentation of the Standard Operating Procedures, if such exists, would certainly have been requested had the government been clear that it was relying upon an inventory search as a basis for the search (alternative to the search incident to arrest) prior to the beginning of the hearing. However, as stated above, it appears that even the government did not know that the Greenville Police Department would reach for inventory search as a reserve argument.

they did an inventory search of the vehicle." Transcript, at 63. Agent Hall-McNeil stated she would amend her report and retrieve a copy of the vehicle inventory record and provide it to defense counsel. Transcript, at 66 ("I'm planning on later today to amend it and add the inventory search as well as try to get a copy of the impound sheet.")[4]

Accordingly, the "facts" testified to by the arresting officer can not credibly lead to a conclusion that Cpl. Miller was following "standard operating procedure" in conducting an inventory search. Rather, it appears that the "standard operating procedure" was not standardized, but rather haphazard and evolving even during the search itself. Miller's testimony indicated that he was searching the jacket in the vehicle because "[he] thought that maybe there was something in the jacket would be of – be a safety concern to myself or another officer." (Transcript, at 12). – that is not the basis permitted under inventory searches. *See Khoury*, 901 F.2d at 959; *Prescott*, 599 F.2d at 105.

Miller's credibility was demonstrably questionable during the hearing. Despite being shown his own written report, he could not remember a number of the facts he alleged in that report. He also could not recall a number of facts told to Agent Hall-McNeil. For example, Cpl. Miller could not recall whether Butler Co. Sheriff Deputy Josh Williams was present during the event. *See* Transcript, at 27-28, 52; *see also* Def. Exh. 2. He claimed to not recall whether he ever drew his weapon. Transcript, at 29. He didn't remember whether Officer Hadley was nearby to assist him following Ms. Owens' arrest. Transcript, at 32, 35. He didn't remember running the name "Ernest Harris" through the computer at

---

[4] An inventory record was provided to the defense by the Assistant United States Attorney two days after the hearing. That Inventory Record *does not* list the jacket, but instead only lists "beer" under the section "Personal Property Found in Vehicle." See Attachment.

any time. Transcript, at 34, 54.  Miller's credibility in general must also be called into question based upon his statements describing Davis's actions and his non-action in response.  If Cpl. Miller had honestly believed that Mr. Davis was armed and dangerous, and Mr. Davis was in fact disregarding instructions concerning, first, fidgeting with his hands in a jacket; (Transcript, at 9, 29), and second, removing the jacket after having expressly been told not do so, (Transcript, at 10), then Cpl. Miller certainly would have either drawn his own service weapon for protection, or immediately removed Mr. Davis from the vehicle.  He would absolutely have also placed Mr. Davis temporarily in handcuffs to secure the scene, (Transcript, at 39), and searched the jacket in the vehicle *immediately* upon removing Mr. Davis from the vehicle.  He failed to take any of these measures.  His failure to take such action, despite his statement that officer safety is *always* a primary concern during a traffic stop (Transcript, at 15), leads to only one rational conclusion: Cpl. Miller's testimony is not credible.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Mr. Davis hereby prays that this Honorable Court will issue an Order and Opinion rejecting the Magistrate Judge's Recommendation as to the facts and analysis set forth with regard to the inventory search which was raised and relied upon, for the first time, at the evidentiary hearing, or in the alternative, set the matter for a new hearing to make additional findings of fact with regard to the alleged inventory search.

Dated this 23rd day of April, 2008.

Respectfully submitted,

s/Joseph P. Van Heest
**JOSEPH P. VAN HEEST**
LAW OFFICE OF JOSEPH P. VAN HEEST, LLC
Post Office Box 4026
402 South Decatur Street
Montgomery, AL 36103-4026
Phone: (334) 263-3551
Fax: (334) 263-3227
jpvanheestcourts@bellsouth.net
AL Bar Code: VAN026

### CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Matthew Shepherd, Esq., Assistant United States Attorney, PO Box 197, Montgomery, Alabama 36101-0197.

Respectfully submitted,

s/Joseph P. Van Heest
**JOSEPH P. VAN HEEST**
LAW OFFICE OF JOSEPH P. VAN HEEST, LLC
Post Office Box 4026
402 South Decatur Street
Montgomery, AL 36103-4026
Phone: (334) 263-3551
Fax: (334) 263-3227
jpvanheestcourts@bellsouth.net
AL Bar Code: VAN026



## U.S. Department of Justice

*United States Attorney*
*Middle District of Alabama*

|  |  |
|---|---|
| 131 Clayton Street<br>Post Office Box 197<br>Montgomery, Alabama 36104-3429 | Telephone: 334/223-7280<br>Fax: 334/223-7560<br>Fin Lit Fax: 334/223-7201<br>Civil Fax 334/223-7418<br>Criminal Fax: 334/223-7135 |

April 10, 2008

Joseph P. Van Heest
PO Box 4026
Montgomery, AL 36103-4026

    RE: United States v. Willie Davis

Dear Mr. Van Heest,

    Enclosed please find additional discovery regarding the above referenced case. This material consists of the following:

    a. Supplemental Report of Investigation by SA Sybil R. Hall-McNeil (1 page);

    b. Greenville Police Department Vehicle Impound/Inventory Record (1 page);

    c. Wrecker Service receipts (2 pages).

    Please contact me if you do not receive the above items or if you would like to discuss this case.

                            Sincerely,

                            Matthew W. Shepherd
                            Assistant United States Attorney

## GREENVILLE POLICE DEPARTMENT
## VEHICLE IMPOUNDMENT/INVENTORY RECORD



### VEHICLE INFORMATION

CASE NUMBER 07-041326

YEAR 1987 MAKE Olds TYPE 4D  COLOR Gold  TAG NO. 1DA3815
ODOMETER READING 130595  VIN.NO. 1G3CW51C05T319648
OPER.LIC.NO. 3401488  ARRESTEE/VEH.OPERATOR Stella Morris Owens
ADDRESS 86 South St.  CITY Greenville  STATE AL  PHONE
REGISTERED/LEGAL OWNER Same  ADDRESS
CITY _____ STATE _____ PHONE _____

### REASON FOR IMPOUNDMENT
TRAFFIC ✓ CRIMINAL ✓ MISD. ___ FELONY ___ OTHER ___
LIST DETAIL CIRCUMSTANCES SURROUNDING IMPOUNDMENT OF VEHICLE:
_____

VEHICLE DRIVEABLE: YES ___ NO ✓ IF NO EXPLAIN: _____

DRIVEN IN BY: _____  EXACT LOCATION WHERE VEH. PICKED UP: South St / South Perry St
TOW IN SERVICE REQUESTED BY: Hadley  SIGNED _____
NAME OF TOW SERVICE: Tills  DRIVER: _____
VEHICLE TOWED TO: Tills installed  DATE 04-27-07 TIME 2136

### INVENTORY/CONDITION OF VEHICLE WHEN IMPOUNDED

DOORS AND TRUNK: LOCKED ___ UNLOCKED ___ KEYS IN CAR ___ KEYS IN PROPERTY ROOM ✓  OTHER ___
LIST GENERAL CONDITION AND ANY SPECIFIC DAMAGE OF VEHICLE FOUND AT TIME OF IMPOUNDMENT: Fair

INVENTORY CONDUCTED BY: Hadley  DATE 04-27-07 TIME 2136

### VEHICLE RELEASE INFORMATION
THE ABOVE VEHICLE HAS BEEN RELEASED TO ME AND I FOUND ITS CONDITION TO BE AS INDICATED ABOVE:
SIGNED _____ DATE _____ TIME _____
RELEASING OFFICER _____ DATE _____ TIME _____

### PERSONAL PROPERTY FOUND IN VEHICLE:
Beer

revised 08/13/01